991 F.2d 793
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ronald C. WATKINS; Karen S. Watkins, Plaintiffs-Appellants,
v.
CONTINENTAL CASUALTY COMPANY, a corporation, Defendant-Appellee.
 No. 92-1626.
 United States Court of Appeals, Fourth Circuit.
 Argued March 1, 1993.
Decided April 19, 1993.
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg (CA-91-53-C), Robert Earl Maxwell, Chief District Judge.
 Mark E. Gaydos, Wilson, Frame & Metheney, argued (Clark B. Frame, Wilson, Frame & Metheney, Morgantown, W.V. on brief), for plaintiffs-appellants,
 J. Greg Goodykoontz, STEPTOE & JOHNSON, argued (Robert G. Steele, STEPTOE & JOHNSON, Clarksburg, W.V, on brief), for Defendant-Appellee.
 N.D.W.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and RESTANI, Judge, United States Court of International Trade, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Ronald C. Watkins, a West Virginia sheriff's deputy, was injured when a stolen car he was investigating exploded. Watkins and his wife, Karen S. Watkins, brought this action in West Virginia state court against the Continental Casualty Company, seeking a declaratory judgment that they were entitled to the proceeds of an uninsured motorist liability policy issued by Continental Casualty and held by Watkins's employer. The parties being diverse, Continental Casualty removed the case to the district court and moved for summary judgment. The district court granted Continental Casualty's motion, holding that Watkins was not a "named insured" under the policy and therefore could not avail himself of its coverage. The Watkinses now appeal the district court's decision, claiming that the court misconstrued the language of the policy. Finding no error, we affirm the judgment of the district court.
 
 
 2
 * By stipulation of the parties, the facts before the district court were not in dispute. On April 26, 1989 Watkins, a Marion County deputy sheriff, was dispatched to the town of Worthington to investigate an abandoned vehicle that reportedly had been stolen from the County's impoundment yard. Upon arriving on the outskirts of Worthington, Watkins spotted the vehicle in a parking lot. Watkins drove into the lot and parked his police cruiser approximately twelve feet behind the abandoned vehicle. He approached the driver's side of the vehicle and opened the front door. The vehicle immediately exploded, severely injuring Watkins.
 
 
 3
 The police cruiser driven by Watkins to the scene of the explosion was insured under a business automobile insurance policy issued to the State of West Virginia by Continental Casualty. The policy contained an uninsured motorist endorsement and a "named insured" endorsement. The named insured endorsement provided that the policy would offer coverage, as named insureds, for those West Virginia political subdivisions which had certificates of liability insurance on file with Continental Casualty. It is undisputed that Marion County had such a certificate.
 
 
 4
 In the district court, Continental Casualty based its motion for summary judgment upon two independent arguments: (1) at the time of the explosion, Watkins was not occupying the insured police cruiser; and (2) the explosion did not occur as a result of the "ownership, maintenance, or use" of the uninsured vehicle. Following oral argument on the motion, the district court held that Watkins was not a "named insured" under the policy, and therefore was not eligible for coverage under the uninsured motorist endorsement. The district court did not find it necessary to determine whether the explosion arose out of the "ownership, maintenance, or use" of an uninsured motor vehicle.
 
 II
 
 5
 In reviewing a grant of summary judgment, we employ the same summary judgment standards applicable in the district court, but are not bound by the theories upon which the lower court relied. On appeal of a summary judgment, "the prevailing party may ... assert in a reviewing court any ground in support of his judgment, whether or not that ground was relied upon or even considered by the trial court." Dandridge v. Williams, 397 U.S. 471, 475 n. 6 (1970). Our review is essentially a plenary review on the summary judgment record before the district court. We therefore need not reverse the district court's grant of summary judgment even if the grounds upon which the grant was made appear incorrect as a matter of law, so long as there is some other legal theory in which summary judgment could be rooted.
 
 
 6
 For Watkins to be covered by the uninsured motorist endorsement of the Continental Casualty policy, two requirements must be met: (1) Watkins either must be an "insured" under the policy, or he must have been "occupying" the insured police cruiser at the time of the accident; and (2) the explosion must have resulted from the "ownership, maintenance, or use" of an uninsured vehicle.* Because this is a diversity action, we must apply West Virginia substantive law in deciding whether Watkins is covered by the uninsured motorist endorsement. See Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938). Therefore, if we find as a matter of West Virginia law that the explosion did not result from the "ownership, maintenance, or use" of the uninsured vehicle, we may affirm the district court on that ground without considering whether the court erred in deciding that Watkins was not a "named insured" under the policy.
 
 
 7
 The West Virginia Supreme Court of Appeals construed the phrase "arising out of the ownership, maintenance, or use" in the context of an automobile insurance policy in Baber v. Fortner, 412 S.E.2d 814 (W.Va.1991). In Baber the court confronted the question whether a voluntary manslaughter conviction establishes the element of intent for purposes of determining coverage under an intentional injury exclusion clause in a liability insurance policy. The policyholder in Baber fired a gun from within the cab of his pickup truck at his ex-wife's boyfriend, thinking the boyfriend was approaching him with weapon in hand. When the boyfriend died as a result of the shot, his estate sued the policyholder, who in turn attempted to invoke the coverage provided by the policy. The policy required that the accident arise out of the "operation, maintenance, or use" of the insured motor vehicle. The West Virginia Supreme Court of Appeals held that an intentional shooting which occurs from within the cab of a stationary pickup truck is not an act arising out of the "ownership, maintenance, or use" of the vehicle. Id. at 818-19. The court reasoned that the policyholder's intentional shooting was not sufficiently linked to the normal use of the vehicle to invoke the policy's coverage:
 
 
 8
 [The] causal connection [between the use of the motor vehicle and the injury] must be more than incidental, fortuitous, or but for. The injury must be foreseeably identifiable with the normal use of the vehicle.
 
 
 9
 Id. (quoting Detroit Auto. Inter-Ins. Exch. v. Higginbotham, 290 N.W.2d 414, 419 (Mich.Ct.App.1980)) (emphasis added).
 
 
 10
 Watkins maintains that the abandoned vehicle was "used" to plant and conceal the bomb and "used" to lure him to the explosion. He argues that the car was "operated" to injure him. These contentions define "use" and "operation" in only the most abstract and disconnected manner. The mere fact that an actual nexus links the use of a vehicle to an accident does not mean that such use was "normal," or that the weak causal connection thereby created makes the injury "foreseeably identifiable" with the vehicle. So construed, nearly any physical object that has some remote connection to an ultimate injury could be "used" to effect the accident that caused the injury. Such an interpretation ignores the Baber court's insistence that the "use" of the car be "foreseeably identifiable with the normal use of the vehicle." The causal relation required in Baber is higher than the "but for" standard Watkins advocates.
 
 
 11
 In the instant case the vehicle served as nothing more than the repository of the explosive; the explosion bore no relationship to the car qua car. The physical injury to Watkins would have been virtually the same had the bomb been left in a suitcase. Nothing unique to the automobile was used to "lure" Watkins to open the door. In short, the car was nothing more than the situs of the explosion. We believe that the West Virginia courts would find such a causal link too tenuous for the injury to arise out of the "ownership, maintenance, or use" of the uninsured vehicle here.
 
 III
 
 12
 Our conclusion on the "ownership, maintenance, or use" question makes it unnecessary for us to consider whether the district court erred in determining that Watkins was not a "named insured" or an "other insured" under the relevant policy language. The judgment of the district court is therefore
 
 
 13
 AFFIRMED.
 
 
 
 *
 The relevant insuring clause of the Continental Casualty's uninsured motorist endorsement reads:
 We will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "uninsured" or "underinsured" motor vehicle. The damages must result from "bodily injury" sustained by the "insured," or "property damage" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance, or use of the "uninsured" or "underinsured motor vehicle."