CONTINENTAL CASUALTY COMPANY, a corporation, Plaintiff–Appellant,

v.

Michael F. FUSCARDO, individually; Shelly Fuscardo, individually; Michael F. Fuscardo, as the next friend of Nicole Fuscardo and Michelle Fuscardo, Defendants–Appellees.

No. 93–2556.

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1994.

Decided Sept. 23, 1994.

**ARGUED:** Amy Marie Smith, Steptoe & Johnson, Clarksburg, WV, for appellant. Daniel Lee McCune, Sellitti, Nogay & McCune, Weirton, WV, for appellees. **ON BRIEF:** J. Greg Goodykoontz, Steptoe & Johnson, Clarksburg, WV, for appellant. James J. Sellitti, Sellitti, Nogay & McCune, Weirton, WV, for appellees.

Before MURNAGHAN and NIEMEYER, Circuit Judges, and HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge MURNAGHAN wrote the opinion, in which Judge HILTON concurred. Judge NIEMEYER wrote a dissenting opinion.

## OPINION

MURNAGHAN, Circuit Judge:

Continental Casualty Company filed a declaratory judgment action pursuant to 28 U.S.C. § 2201 in the United States District Court for the Northern District of West Virginia to resolve a dispute with members of the Fuscardo family involving potential coverage under an uninsured motorist policy. The district court declined to exercise jurisdiction over the matter and dismissed the case. Continental Casualty has appealed claiming that the court erred in dismissing the case and in declining to grant Continental Casualty's motion for summary judgment. Finding that the court properly exercised its discretion not to hear the case, we affirm the district court's decision to dismiss the declaratory judgment action.

While on patrol on the evening of November 28, 1992, Michael F. Fuscardo, a police officer for the City of Weirton, West Virginia received a report about a litterer named Samuel P. Lorello. Fuscardo drove his cruiser to a parking lot in which he knew Lorello's van had been parked for several days. Fuscardo left his car running approximately fifteen feet away from the van, exited his cruiser, and approached the van. Standing within two or three feet of the van, Fuscardo confronted Lorello about the littering. Without replying, Lorello threw a mixture of caustic liquids containing sulfuric acid, brake fluid, transmission fluid, and Liquid Drano from the passenger side window of the van into Fuscardo's face, blinding the officer. The mixture also injured Fuscardo's face and hands. Lorello moved to the driver's seat, started the van, and fled the scene.

Lorello's van was not insured. The police cruiser Fuscardo had been driving immediately preceding the incident was insured under an automobile liability policy issued by Continental Casualty to the State of West Virginia and the City of Weirton. The insurance policy at issue provided uninsured motorist coverage for incidents arising out of the ownership, maintenance or use of an uninsured vehicle.

Lorello was arrested and charged in connection with the incident. In June 1993, the Circuit Court of Hancock County found him incompetent to stand trial due to chronic, paranoid schizophrenia. The Fuscardos, in compliance with West Virginia law, notified Continental Casualty of a potential claim under the uninsured motorist endorsement. Subsequently, on December 20, 1992 the Fuscardo family filed a personal injury action against Lorello in the Circuit Court of Hancock County, West Virginia. Although Continental Casualty was not a named party in the action at the time of filing, the Fuscardos served Continental Casualty with copies of the summons and complaint in that case pursuant to W.Va.Code § 33–6–31.[1] The notice

---

1. West Virginia Code § 33–6–31 deals with uninsured and underinsured motorists' coverage; conditions for recovery under endorsement; and the rights and liabilities of the insurer, and it provides in relevant part:

    (d) Any insured *intending to rely on the coverage required by subsection (b) of this section shall,* if any action be instituted against the owner or operator of an uninsured or underinsured motor vehicle, *cause a copy of the summons and a copy of the complaint to be served upon the insurance company issuing the policy,* in the manner prescribed by law, *as though such insurance company were a named party defendant;* such company shall thereafter have the right to file pleadings and to take other action allowable by law in the name of the owner, or operator, or both, of the uninsured

to and service on the insurance company were to preserve any uninsured motorist coverage the Fuscardos might have with respect to Lorello's actions. Continental Casualty reserved its right to dispute coverage under its uninsured motorist policy.

On January 20, 1993, in the United States District Court for the Northern District of West Virginia, Continental Casualty filed a declaratory judgment action pursuant to 28 U.S.C. § 2201 against the Fuscardos. It sought a declaration that the automobile insurance policy issued to the City of Weirton did not provide uninsured or underinsured motorist benefits coverage to Fuscardo or his family. On November 8, 1993, the district court declined to exercise jurisdiction over the matter and dismissed the action relying primarily on *Mitcheson v. Harris*, 955 F.2d 235 (4th Cir.1992).

After the district court rendered its decision, the Fuscardos filed a motion to amend their complaint in the Circuit Court of Hancock County. When that court granted the motion, the Fuscardos amended the complaint to include a declaratory action against Continental Casualty regarding the same coverage issues the insurance company sought to have resolved in the federal district court. The state trial on the coverage issues is currently scheduled to take place on August 19, 1994.

Continental Casualty has argued that the district court abused its discretion in dismissing the action and erred in declining to grant summary judgment in favor of Continental Casualty. The Fuscardos have responded that the district court's decision should be affirmed and that the issues should be resolved in state court pursuant to the declaratory action recently filed there.

### Jurisdiction

■■■ We acknowledge at the outset that the district court did have diversity jurisdiction under 28 U.S.C. § 1332 to entertain the declaratory judgment action filed by Continental Casualty. The declaratory judgment action was filed pursuant to 28 U.S.C. § 2201

or underinsured motor vehicle or in its own name.

which provides, in a case of actual controversy, that:

> any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. Pursuant to that provision, federal courts have the discretion to decide whether to hear declaratory judgment actions.

*Charter Federal Savings Bank v. O.T.S.*, 976 F.2d 203, 208 (4th Cir.1992). The statute does not impose a mandatory obligation upon the federal courts to make such declarations of rights. *Nautilus Insurance Co. v. Winchester Homes*, 15 F.3d 371, 375 (4th Cir. 1994). The critical question before us is whether the district court should have exercised its discretion to give effect to the jurisdiction it possessed in order to entertain Continental Casualty's action. This court reviews a district court's decision to decline to entertain a declaratory action *de novo*. *Charter Federal*, 976 F.2d at 208; *Nautilus*, 15 F.3d at 375.

■■■ A federal court has the discretion to decline to entertain a declaratory judgment action, but, under the law of this Circuit, the court must do so only for "good reason." *Aetna Casualty & Surety Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir.1937).

Because the remedial discretion conferred by the Declaratory Judgment Act must "be liberally exercised to effectuate the purposes of the statute," ... we have held that a federal district court should normally entertain a declaratory judgment action within its jurisdiction when it finds that the declaratory relief sought (i) " 'will serve a useful purpose in clarifying and settling the legal relations in issue,' " and (ii) " 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' "

§ 33–6–31(d) (emphasis added).

*Nautilus,* 15 F.3d at 375 (referencing *White v. National Union Fire Ins. Co.,* 913 F.2d 165 (4th Cir.1990)[2] and *Quarles*) (citations omitted).

The district court in the instant case exercised its discretion not to hear the action filed by Continental Casualty. In doing so, it relied on *Mitcheson v. Harris,* 955 F.2d 235 (4th Cir.1992). As Continental Casualty has pointed out, we have rendered the *Nautilus* opinion dealing with the declaratory judgment discretion issue since the district court entered judgment in the proceedings before it. In *Nautilus,* we examined and reconciled the main Fourth Circuit cases that are determinative of the appeal: *Aetna Casualty & Surety Co. v. Quarles,* 92 F.2d 321 (4th Cir. 1937); *Stout v. Grain Dealers Mut. Ins. Co.,* 307 F.2d 521 (4th Cir.1962); *White v. National Union Fire Ins. Co.,* 913 F.2d 165 (4th Cir.1990); and *Mitcheson.* Primarily, we emphasized that *Mitcheson* did not change the rule set out in *Quarles* and followed in *White,* but rather allowed for the consideration of additional factors such as federalism, efficiency and comity when the circumstances require such an analysis.

*Mitcheson,* the most recent of our cases prior to *Nautilus,* addressed a situation in which the insurer came to federal court seeking a declaratory judgment on coverage issues while the underlying litigation against its insured was pending in state court. The pending state action stemmed from the same overall controversy, contained overlapping issues, and involved only nonremovable questions of state law. In *Mitcheson,* the court indicated that federalism, efficiency, and comity should figure into the discretionary balance when previously filed state litigation on the primary claims is pending. In that case, the court held that the district court should have exercised its discretion to decline to entertain the action. Thus, as a result of *Mitcheson,*

> when a federal court is confronted with an insurer's request for a declaratory judgment on coverage issues during the pendency of related litigation in the state courts, its discretion must be guided not only by the criteria outlined in *Quarles,* which focus on the general utility of the declaratory relief sought, but also by the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts.

*Nautilus,* 15 F.3d at 376.

In *Nautilus,* we reiterated the considerations mandated by the additional concerns of federalism, comity and efficiency described in *Mitcheson* and added a new, related consideration. The factors that a court must consider pursuant to the *Nautilus* decision include the following: 1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state court; 2) whether the issues raised in the federal action can be more efficiently resolved in the pending state action; 3) whether the federal action might result in unnecessary entanglement between the federal and state systems due to overlapping issues of fact or of law; and 4) whether the federal action is being used merely as a device for "procedural fencing," i.e., to provide another forum in a race for *res judicata. Nautilus,* 15 F.3d at 377.

█ Based on the *Quarles/White* criteria and an analysis of the *Nautilus* factors in the context of the instant case, the district court did not abuse its discretion by declining to exercise jurisdiction over Continental Casualty's declaratory action. Although the declaratory relief sought would serve a useful purpose in clarifying and settling the legal relations at issue and would afford relief from the uncertainty giving rise to the proceedings, the competing considerations outlined in *Nautilus* justify an affirmance of the district court's decision.

█ First, Continental Casualty's request for declaratory relief raises issues of state law regarding the construction of Continental Casualty's uninsured motorist policy that are central to and potentially dispositive of the allocation of liability. The state court that is

---

**2.** Although *Nautilus* involved liability insurance coverage, *White,* cited frequently in *Nautilus,* involved underinsured motorist coverage similar to the coverage at issue in the instant case.

exercising jurisdiction over the Lorello proceedings is particularly well-positioned to resolve those questions of state law. The state court's resolution of the issue will determine which party bears the risk of loss in the state tort proceeding. Because the issues that will determine the outcome of the summary judgment motions are governed by substantive West Virginia law, West Virginia has an interest in having the issues decided in state court. Although "that alone provides no reason for declining to exercise federal jurisdiction," *Nautilus*, 15 F.3d at 378, when considered in conjunction with the other *Nautilus* factors, the fact that state law controls the questions before the court militates in favor of the district court's decision to decline jurisdiction.

We acknowledge, however, that the issues of state law presented are not as "close," "problematic," or "difficult" as those before the court in *Mitcheson*. Here, the questions of state law involve the application of relatively settled principles of law to particular disputed facts. *Baber v. Fortner*, 186 W.Va. 413, 412 S.E.2d 814 (1991) and *Watkins v. Continental Casualty Co.*, No. 92–1626, 1993 WL 127950, 1993 U.S.App. LEXIS 8862 (4th Cir. April 19, 1993) appear to supply the answer to the parties' dispute regarding the scope of coverage under Continental Casualty's uninsured motorist policy. The cases establish that an insurance policy with language such as that contained in Continental Casualty's policy requires that "[t]he injury must be foreseeably identifiable with the normal use of the vehicle." *Baber*, 412 S.E.2d at 819. *Baber* held, as a matter of law, that an intentional shooting from the cab of an uninsured, stationary truck was not an act arising out of the ownership, maintenance or use of the vehicle. *Id.* Recently, we applied *Baber* in *Watkins* when we construed the same provision in Continental Casualty's uninsured motorist policy as is at issue in the instant

case. The fact that West Virginia has already considered issues analogous to the issue before the court in the instant case lessens the state's interest in having the particular issue decided in state court. Because the outcome is not certain, however, we believe that the state's limited interest combined with the other elements of the *Nautilus* test justify the district court's action.

As to the second *Nautilus* factor, the district court was presented with a declaratory action while state law claims filed by Fuscardo against Lorello were pending in state court. Under *Nautilus*, we are required to review "the district court's decision to dismiss this action on the basis of the situation that confronted it at the time it made that decision...." *Nautilus*, 15 F.3d at 379 n. 6.[3] A complete analysis of the efficiency factor also requires an inquiry into the scope of the state proceedings pending at the time the federal action was instituted. At the time Continental Casualty filed its district court action, the Fuscardos had not yet amended the complaint they had filed in state court to include a declaratory action against Continental Casualty. Technically, Continental Casualty was not yet a party to the state proceedings. The Fuscardos added the declaratory action to their state complaint after the district court dismissed the federal declaratory action filed by Continental Casualty.[4] At the time Continental Casualty filed in district court, however, the Fuscardos had already notified Continental Casualty that they "intended to rely on the coverage" provided by it by sending Continental Casualty a copy of the summons and complaint pursuant to West Va.Code § 33–6–31. Thus, while not technically at issue in the state court, practically speaking, it was inevitable that Continental Casualty's coverage issue would arise before that court.

---

3. A caveat to that rule exists requiring the court to abstain if the subsequent developments render the proposed federal action moot, which is not the case here.

4. In *Nautilus*, the party in favor of the dismissal of the federal court action had not filed a similar action in state court when the insurer filed in federal court. We questioned whether the insurers could even be brought into the state proceed-

ings by the time the case reached our court. In the instant case, the Fuscardos did not file a state declaratory action until the district court dismissed Continental Casualty's declaratory judgment action. At this point, however, the Fuscardos have already amended their state complaint, and it is clear that the insurers are proper parties to the state action as it now stands.

Continental Casualty has argued that it sought declaratory relief in federal court because such a determination would be useful to the parties, would facilitate settlement, and would eliminate the uncertainty surrounding the proceedings. The state court that was already exercising jurisdiction over the Fuscardo claims against Lorello at the time Continental Casualty filed was fully capable of entertaining a state declaratory judgment action which would have provided the same benefits. Fuscardo's intention to bring a claim asserting uninsured motorist liability against Continental Casualty had already been telegraphed. The coverage issues could have been resolved efficiently in the context of the state proceedings.

Regarding the third *Nautilus* factor, the federal court's resolution of the issues on the instant case would not have resulted in unnecessary entanglement of the state and federal court systems. The personal injury tort issues that would be litigated between Lorello and Fuscardo in state court are discrete from those issues involving insurance coverage which Continental Casualty sought to have adjudicated in the federal court. The trial on the state declaratory action filed by the Fuscardos is scheduled to begin in August of this year. When Continental Casualty filed its declaratory action, none of the insurance issues were being litigated in the state court. The declaratory action as filed in the district court consequently did present a discrete legal controversy capable of being resolved in the district court without involving overlapping factual issues or creating undue entanglement of legal issues.

Finally, however, the sequence of events, analyzed under the fourth *Nautilus* factor, indicates that the federal declaratory action may have been used as a form of procedural fencing, i.e., forum shopping. The underlying tort action was already pending in state

court when Continental Casualty filed in federal court.[5] Continental Casualty had received notice of that pending action suggesting that an uninsured motorist claim would be lodged against it when Continental Casualty chose to file a separate action in federal court to obtain a resolution of the coverage issue. Although Continental Casualty has argued that it filed a federal action prior to the filing of any similar action in state court, and technically that is true, still Continental Casualty had been notified that the Fuscardos intended to rely on the uninsured motorist coverage provided by Continental Casualty in their proceedings against Lorello.[6] While the issues regarding insurance coverage *per se* were not before the state court in the proceedings involving Lorello and the Fuscardos when Continental Casualty filed an action in the district court, Continental Casualty already knew that the coverage issues were bound to arise during the course of those proceedings. Continental Casualty has attempted to have the coverage issue determined by the federal court before the issue arose in the context of the state proceedings. Under *Nautilus*, a federal action of this kind may be filed "in an entirely proper effort to obtain prompt resolution of a dispute over [an insurer's] obligation...." *Nautilus*, 15 F.3d at 380.

However, given the pendency of state proceedings and the inevitability of Continental Casualty's involvement in those proceedings, the state court was just as capable of promptly resolving the dispute over the insurance coverage question as the district court was.

West Virginia's interest in resolving the issues of substantive state law in state court, the efficiency of resolving the issues in the context of the pending state proceeding, and the likelihood that Continental Casualty filed an action in federal court in order to acquire

**5.** In *Mitcheson*, the primary litigation pending in state court when the insurer filed a declaratory judgment action involved only non-removable questions of state law. In that case, a tenant and her three-year-old charge filed suit against the landlord in state court seeking recovery for injuries surrounding the child's lead poisoning. As in *Mitcheson*, the primary litigation in the instant case, which seeks recovery from Lorello for Fuscardo's injuries, was pending in state court when

Continental Casualty filed in federal court and involved only non-removable questions of state law.

**6.** To preserve the uninsured motorist claim, Continental Casualty had to be served as though it were a named party defendant. W.Va.Code § 33–6–31.

the most hospitable forum, all compel the conclusion that the district court did not abuse its discretion in declining to exercise jurisdiction over the declaratory action. The concerns of federalism, comity and efficiency outlined in *Mitcheson* and reiterated in *Nautilus* suggest that the state court is a proper forum for the resolution of the issues.

### Summary Judgment

In the proceedings below the district court granted the Fuscardos' motion to dismiss and declined to rule on the cross-motions for summary judgment submitted by the parties.[7] While we believe, as indicated above, that West Virginia law will mandate a decision in favor of Continental Casualty on the issues before the court under *Baber* and *Watkins,* we decline to address the merits of the summary judgment motions in detail. There is a possibility that the West Virginia court may view *Baber* and *Watkins* differently or ascertain distinctions from those cases. In light of our affirmance of the district court's dismissal of the action, we acknowledge that the court's decision to decline to rule on the motions for summary judgment was appropriate.

Accordingly, the judgment is

*AFFIRMED.*

NIEMEYER, Circuit Judge, dissenting:

Michael Fuscardo, a police officer, was seriously injured when he stepped from his patrol car and walked some 15 feet toward a parked van to investigate a littering complaint. As he approached the van to talk to Samuel Lorello, who was in the van, Lorello threw a mixture of caustic liquids in Officer Fuscardo's face, blinding him. Lorello fled the scene, but was later apprehended and, several months later, a state court found him incompetent to stand trial for criminal charges.

Officer Fuscardo notified Continental Casualty Company of a potential claim for personal injury because Continental Casualty had issued an insurance policy providing coverage for Officer Fuscardo's patrol car, which included uninsured motorist coverage. Lorello was uninsured at the time he caused personal injury to Fuscardo. In December 1992, when Officer Fuscardo sued Lorello in state court for personal injuries, he also provided Continental Casualty with a copy of the complaint.

Promptly after receiving notice of the suit, Continental Casualty instituted this declaratory judgment action in federal court under 28 U.S.C. § 2201 for a declaration that its insurance policy did not cover Fuscardo's injuries because they did not arise out of the "normal use" of an automobile. Jurisdiction of the district court was based on diversity of citizenship under 28 U.S.C. § 1332. The district court, however, declined to exercise jurisdiction and dismissed the case, relying on our decision in *Mitcheson v. Harris,* 955 F.2d 235 (4th Cir.1992). In doing so, the district court misconstrued the holding of *Mitcheson* and, in my judgment, improperly refused to exercise diversity jurisdiction which had been properly invoked.

Section 2201 of Title 28 authorizes federal courts to afford the remedy of a declaratory judgment. The statute provides, in relevant part:

> Any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

While recognizing that the remedy has an aspect of discretion about it and need not automatically be afforded whenever prayed, "a federal district court should normally entertain a declaratory judgment action within its jurisdiction when it finds that the declaratory relief sought (i) 'will serve a useful purpose in clarifying and settling the legal relations in issue,' and (ii) 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Nautilus Ins. Co. v. Winchester Homes, Inc.,* 15 F.3d 371, 375 (4th Cir.1994) (internal citations omitted). When a district court decides not to provide the declaratory

---

7. The court also declined to rule on the Fuscardos' motion to certify questions of state law to the West Virginia court.

judgment remedy, it must do so for good reason, *id.,* and we review that decision "essentially *de novo." Id.*

This case presents the classical archetype for the appropriate use of a declaratory judgment action. An insurance company, which is called upon to provide coverage in circumstances which do not readily appear to fall within the scope of coverage, seeks a judicial determination that its policy affords no coverage. The decision on the coverage issue will not put at risk, by issue preclusion or claim preclusion, the ability of any state court to adjudicate fairly the underlying liability. The underlying state suit against Lorello in this case is a straightforward tort action for personal injury caused by his throwing caustic liquid at Officer Fuscardo. The declaratory judgment action in federal court raises the sole issue of whether Officer Fuscardo's injury resulted from the operation, maintenance or use of an automobile, and the resolution of this issue would not draw upon any element that is necessary to establish or defend against the personal injury claim in the state court.

The simple fact that the state court action was pending when the federal declaratory action was filed is not determinative of the question. Indeed, it is common practice for insurance companies to file declaratory judgment actions in response to coverage questions raised by underlying state lawsuits. *See Nautilus,* 15 F.3d at 376 n. 4.

In addition to not interfering with the state court's ability to adjudicate the personal injury action, the federal declaratory judgment action would not resolve any difficult question of state law. On the contrary, it would appear that the coverage issue is dictated by the decision in *Baber v. Fortner,* 186 W.Va. 413, 412 S.E.2d 814, 819 (1991), where the court held that as a matter of law, an intentional shooting from the cab of a stationary truck was not an act arising out of the ownership, maintenance or use of the vehicle. *See also Watkins v. Continental Casualty Co.,* No. 92–1626, 1993 WL 127950 (4th Cir. Apr. 19, 1993). Indeed, the majority opinion in this case acknowledges this fact: "Here, the questions of state law involve the application of relatively settled principles of law to particular disputed facts." Op. at 967.

I can perceive no reason, whether grounded in federalism, comity, or efficiency, why the federal declaratory action in this case should not proceed, and the simple fact that the plaintiff in this case invoked federal jurisdiction provides a reason why it should. Federal courts have an obligation to decide cases within their jurisdiction, and the fact that the jurisdiction arises under diversity of citizenship, 28 U.S.C. § 1332, does not lessen this obligation. Indeed, diversity jurisdiction fulfills a constitutionally established obligation. *See* U.S. Const., art. III, § 2. Similarly, the fact that a federal court is called upon to apply state law ordinarily does not excuse the obligation. While it is recognized that in certain limited circumstances federal courts will abstain when complex questions of state law which have not been resolved are involved, we are not presented in this case with anything close to that situation. To abstain from exercising diversity jurisdiction in this case amounts, in my judgment, to an abdication of judicial responsibility.

The district court in this case relied on our decision in *Mitcheson v. Harris.* But that case is significantly different and provides no precedential justification for its decision in this case. In *Mitcheson,* the insurance company provided a one-year insurance policy to cover a landlord's liability risk in connection with his ownership of a rental house. When the landlord was later sued for lead paint poisoning suffered by tenants in the house, he sought coverage from the insurance company. A difficult question of coverage was presented, relating to when the "occurrence," as defined by the policy, took place and whether it preceded the effective date of the insurance policy. This, in turn, depended on whether the occurrence took place when the lead paint was discovered or when the injury from it was first diagnosed. We observed in *Mitcheson* that the issues in the underlying case and in the coverage case overlapped and that resolution of the coverage issue could significantly impact on issues in the underlying case, and vice versa: "The insured may well be collaterally estopped from relitigating the overlapping issues decided in the federal action." 955 F.2d at 239. Recognizing that the state law was not well established, we also stated, "The federal court here should not elbow its way into this controversy to

render what may be an 'uncertain and ephemeral' interpretation of state law." *Id.* at 238. The holding in *Mitcheson* thus is an exception justified by the particular circumstances presented there. It does not control this garden-variety declaratory judgment action.

The decision that the majority makes today will, I am afraid, introduce confusion into the long and well-established declaratory judgment practice of which insurance companies and others have availed themselves routinely over the years. Arguably, the holding of this case could be cited in virtually every circumstance in which a federal declaratory judgment action follows the filing of a state court action as authority for a routine dismissal of the federal action. This result was clearly not intended by the Declaratory Judgment Act nor by the policy of diversity jurisdiction.

For the foregoing reasons I would reverse the order of the district court dismissing this case and enter judgment for Continental Casualty, based on the *Baber* decision. Alternatively, I would agree to remand this case to the district court for it to receive arguments why *Baber* should not be applied to control the coverage issue.

Accordingly, I dissent.