**NORTH JEFFERSON SQUARE ASSOCIATES, L.P.,**

and

**Shelter Management Corporation, Plaintiffs,[1]**

v.

**VIRGINIA HOUSING DEVELOPMENT AUTHORITY,**

and

**U.S. Department of Housing and Urban Development (HUD), Defendants.[2]**

No. Civ.A. 4:98CV77.

United States District Court, E.D. Virginia, Newport news Division.

March 23, 2000.

---

**1.** By Order of the Court on October 8, 1999, Plaintiff Shelter Management Corporation was dismissed as a party.

**2.** The Court granted leave to add the "United States Department of Housing and Urban Development" to this civil action by Order of the Court dated July 30, 1998. The July 30, 1998

Order directed service be made on the Honorable Andrew M. Cuomo, Secretary of the Department. The Parties are reminded that, despite service upon the Secretary, leave was made only to add the Department as a defendant and that Secretary Cuomo is not a party to this lawsuit.

Michael Bruce Ware, Mark Andrew Short, Jones, Blechman, Woltz & Kelly, Alan Arnold Diamonstein, Diamonstein, Becker & Staley, P.L.C., Newport News, VA, for Plaintiffs.

Carl F. Bowmer, Christian & Barton, LLP, Richmond, VA, George M. Kelley, III, United States Attorney's Office, Norfolk, VA, for Defendants.

## MEMORANDUM OPINION AND ORDER

JACKSON, District Judge.

This matter is before the Court on the two pending motions to dismiss of the Defendant U.S. Department of Housing and Urban Development following referral to a United States Magistrate Judge. The Magistrate Judge filed his Report and Recommendation on December 8, 1999. The Magistrate Judge's recommendation is to grant the motions to dismiss and remand the case to the Circuit Court of the City of Newport News, Virginia. The Virginia Housing Development Authority filed a response with objections to the Magistrate Judge's Report and Recommendation on December 23, 1999. The Plaintiff makes no objection to the Magistrate Judge's recommendation and no opposition to the underlying motions. For the reasons stated below, the Court **ACCEPTS** the Magistrate Judge's Report and Recommendation and Defendant U.S. Department of Housing and Urban Development's motions are **GRANTED.** Furthermore, this matter is **REMANDED** to the Circuit Court of the City of Newport News.

## I. FACTUAL & PROCEDURAL HISTORY

Plaintiff, North Jefferson Square Associates, L.P. (hereafter "North Jefferson Square" or "Plaintiff"), represents a limited partnership and owner of the North Jefferson Square Apartments located in Newport News, Virginia. The Plaintiff brings this action stemming from its relationship with the Virginia Housing Development Authority. The Virginia Housing Development Authority (hereafter "the Authority") is a creature of the Commonwealth of Virginia created to "encourage

the investment of private capital in and stimulate the construction and rehabilitation of residential housing through public financing to meet the housing needs of persons of low and moderate income." *Atkins v. Robinson,* 545 F.Supp. 852, 858 (E.D.Va.1982). Upon initiation of this litigation the Authority sought to join the United States Department of Housing and Urban Development (hereafter "HUD"), a cabinet level agency of the United States, as an additional defendant.

## A. Procedural History

The Plaintiff initiated suit originally in the Circuit Court of the City of Newport News against the Authority only. On June 16, 1998, the Authority filed a notice of removal to this Court based upon 28 U.S.C. § 1331, the United States Housing Act of 1937, and relevant federal housing regulations. The Authority also moved under Federal Rule of Civil Procedure 19 to join HUD as a party defendant. The Authority argued that HUD was a necessary party to the litigation. Upon granting of the Authority's Rule 19 motion, the Plaintiff filed an Amended Complaint adding HUD as a defendant.

HUD filed the first motion to dismiss, largely predicated upon sovereign immunity, on December 3, 1998. The Authority opposed this first motion, but the Plaintiff did not. The Authority subsequently filed a third-party complaint against HUD, essentially seeking declaratory judgment against HUD. HUD filed a second motion to dismiss as to the third-party complaint by the Authority on May 25, 1999, arguing that there was no case or controversy to invoke the Court's jurisdiction.

## B. Factual History

Two elements of public housing finance arise in this case. First, the case involves the process by which the Authority, as a state housing agency, stimulates improvements to the housing stock. Secondly, the case implicates the role of the federal government in subsidizing the rents of tenants under what is known commonly as "Section 8 housing."

The Authority issues tax-exempt bonds and notes to finance housing construction under § 11(b) of the United States Housing Act of 1937, 42 U.S.C. § 1437i. The funds raised by this process are then distributed by the Authority to private entities who build, maintain, and manage low income housing, such as the North Jefferson Square Apartments. The obligations issued by the Authority are secured by a pledge of a loan and/or annual contributions from HUD under an "Annual Contributions Contract" between the Authority and HUD.

Section Eight of the United States Housing Act of 1937, as amended, authorizes the Annual Contributions Contract, whereby HUD provides subsidy and administrative payments to the Authority. The intended results of the program are to ensure that eligible tenants pay no more than thirty percent of their monthly income for rent. Using the funds provided by HUD under the Annual Contribution Contract, the Authority then contracted with the Plaintiff to provide housing assistance subsidies to the Plaintiff to be applied against the rent of eligible tenants under the terms of a "Housing Assistance Payment Contract." Thus, in summary, two contracts exist in this matter: the Annual Contribution Contract between HUD and the Authority and the Housing Assistance Payment Contract between the Authority and the Plaintiff.[3]

The Plaintiff received a mortgage in 1983 from the Authority at a rate of 11.11%. In 1993, the Authority refinanced its own debt to an interest rate of 7.71%.[4]

---

**3.** A third agreement, entitled "Regulatory Agreement," also is filed with the Court with the Plaintiff's Amended Complaint, but has little bearing in the matters now before the Court.

**4.** The Authority contests the characterization of this action as "refinancing," preferring to call this action a "refunding" of the interest rate. *See* Memorandum in Support of Objections at 2 (Dec. 23, 1999).

However, the Authority continues to require that the Plaintiff pay interest on the Plaintiff's loan at the original rate of 11.11%, with a resultant surplus to the Authority. It appears that at no time did any of the savings stemming from the interest rate reduction redound to the benefit of either the Plaintiff or HUD.

Plaintiff seeks to recover a certain sum of money and for a reduction of the mortgage interest rate. The Authority moves for declaratory judgment on three questions:

1) Is the Authority required under the Deed of Trust Note to reduce the mortgage loan interest rate and the amount of debt service to the Plaintiff on account of the change in interest rate?

2) If the debt is reduced to the Plaintiff, must the contract rents and housing assistance payments be reduced commensurately under the housing assistance contract and Section 8 regulations?

3) Is the Authority entitled to one-half of any savings realized as a result of the interest changes?

*See* Third Party Complaint at 6 (Apr. 1, 1999).

Under the authority granted in 28 U.S.C. § 636(b)(1)(B) and (C) and Federal Rule of Civil Procedure 72(b), the Court assigned this matter to a Magistrate Judge for the present Report and Recommendation.

## II. LEGAL STANDARDS

The applicable standard of review is clear. The Magistrate Judge makes only a recommendation to the Court, to which any party may file written objections within ten days after being served with a copy of the Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). The Court is not bound by the recommendations of the Magistrate Judge but, instead, retains responsibility for the final determination. *See Mathews v. Weber,* 423 U.S. 261, 271, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The Court is required

to make a *de novo* determination of those portions of the report or specified findings or recommendation as to which an objection is made. *See* 28 U.S.C. § 636(b)(1). However, the Court is not required to review the factual or legal conclusions of the Magistrate Judge as to those portions of the Report and Recommendation to which no objections are addressed. *See Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). While the level of scrutiny entailed by the Court's review thus depends on whether or not objections have been filed, in either case the Court is free, after review, to accept, reject, or modify any of the Magistrate Judge's findings or recommendations.

The Defendant HUD raises two motions to dismiss. A motion to dismiss may attack the complaint on its face or the truth of the underlying jurisdictional allegations contained in the complaint. The nonmovant has the burden to allege and prove such jurisdiction. *Lane v. David P. Jacobson & Co., Ltd.,* 880 F.Supp. 1091, 1094 (E.D.Va.1995) (citing *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982)). This Court must weigh the evidence before it to establish its jurisdiction: "A court asked to dismiss for lack of jurisdiction may resolve factual disputes to determine the proper disposition of the motion." *Thigpen v. United States,* 800 F.2d 393, 396 (4th Cir. 1986).

The Magistrate Judge's Report and Recommendation presents the legal standard for a motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). When considering a motion under Rule 12(b)(6), "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Furthermore, courts must assume the facts in the plaintiffs' complaint to be true. *See Johnson v. Mueller,* 415 F.2d 354, 355 (4th Cir.1969). The motion should only be granted if "it appears to a certainty that the plaintiff

would be entitled to no relief under any state of facts which could be proved in support of his claim." *Id.* (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Adams v. Bain,* 697 F.2d 1213, 1216 (4th Cir.1982).

■ However, in the Magistrate Judge's analysis, the ultimate results rest on a finding of no pending controversy, thus warranting dismissal. Such dismissals are cognizable under Federal Rule 12 as dismissals for want of subject matter jurisdiction by this Court. *See Tuvia Convalescent Center, Inc. v. National Union of Hospital and Health Care Employees,* 717 F.2d 726, 729 n. 1 (2d Cir.1983) ("[T]he absence of a justiciable controversy will result in dismissal, since subject matter jurisdiction cannot be conferred on the court."). It is fundamental to the exercise of judicial powers that a genuine case and controversy be before the Court. *See Gasner v. Board of Supervisors,* 103 F.3d 351, 361 (4th Cir.1996); *see also* U.S. CONST. art. III, § 2.

The advent of the Declaratory Judgment Act, 28 U.S.C. § 2201, has led to a greater understanding of the Court's Constitutional duties and the need for judicial economy. The act provides in relevant part that:

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

*Id.*

■ However, the exercise of the Declaratory Act's authority by this Court is not mandated, but rather is discretionary. *See Aetna Casualty & Surety Co. v. Ind–Com Elec. Co.,* 139 F.3d 419 (4th Cir.1998) (per curiam). "This circuit has long recognized the discretion afforded to district courts in determining whether to render declaratory relief." *Id.* at 421. The Court notes the Court of Appeals instruction in *White v. National Union Fire Insurance Co. of Pittsburgh,* 913 F.2d 165 (4th Cir. 1990), that:

> In essence, for a district court to have jurisdiction to issue a declaratory judgment, two conditions must be satisfied. First, the dispute must be a "case or controversy" within the confines of Article III of the United States Constitution—the "constitutional" inquiry. Second, the trial court, in its discretion, must be satisfied that declaratory relief is appropriate—the "prudential" inquiry.

*Id.* at 167.

■ As for the question of remand, the Authority bears the burden as the removing party. *See Mulcahey v. Columbia Organic Chemicals Co., Inc.,* 29 F.3d 148, 151 (4th Cir.1994). Removal jurisdiction is construed strictly because of the federalism implications from removal. Where jurisdiction is doubtful, remand is required. *Id.* In this case, federal jurisdiction is premised upon 28 U.S.C. § 1331, whereby this Court has original jurisdiction over civil actions "arising under the Constitution, law, or treaties of the United States." 28 U.S.C. § 1331. "In cases where federal law creates the cause of action, the courts of the United States unquestionably have federal subject matter jurisdiction." *Mulcahey,* 29 F.3d at 151. Where the cause of action is state law based, then "federal question jurisdiction depends on whether the plaintiff's demand 'necessarily depends on resolution of a substantial question of federal law.'" *Id.* (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)).

## III. DISCUSSION

The Authority raises two grounds of objections to the Magistrate Judge's Report and Recommendations. First, the Authority disputes the Magistrate Judge's conclusion that no case or controversy is present,

thus requiring dismissal. Secondly, the Authority argues that the case still maintains a federal question basis for jurisdiction, militating against remand to the Circuit Court of the City of Newport News. The Court addresses first the question of the dismissal, then will address the question of return of this matter to state court.

## A. HUD's Pending Motions to Dismiss

### The Constitutional Inquiry

■ A United States District Court is a court of limited jurisdiction. The limits are set primarily from Congressional mandate, but fundamentally are governed by Article III of the United States Constitution. The Authority seeks to include HUD because of fears of "double liability or inconsistent obligations." Memorandum in Support of Objections to the Magistrate Judge's Report and Recommendation at 7 (Dec. 23, 1999). In its June 21, 1999 opposition memorandum, the Authority states that it:

> [M]ay face liability under either of the following circumstances: (a) if [the Authority] does not reduce the contract rents, [the Authority] may be held liable to HUD for breach of the [Housing Assistance Payment Contract] ... for its failure to so reduce the contract rents, or (b) if [the Authority] reduces the contract rents, [the Authority] may be held liable to North Jefferson for breach of the [Housing Assistance Payment Contract] for reducing the contract rents.

Memorandum in Opposition to HUD's Motion to Dismiss at 5 (June 21, 1999). The Authority further argues that the financing at 11.11% interest did not constitute "permanent financing" under subsection (c) of 24 C.F.R. § 883.308 and Paragraph 2.7(g)(2) of the Housing Assistance Payment Contract.

The Authority states a legal position that denies any obligation to reduce the interest rate on the mortgage loan to the Plaintiff as a result of the bond refunding. See Third Party Complaint at 5 (Apr. 1, 1999). In taking this position, the Authori-

ty essentially argues that the 11.11% financing does not constitute "permanent financing." The Housing Assistance Payment Contract and 24 C.F.R. § 883.308(d) provide that where the actual debt service "under the permanent financing is lower than the anticipated debt service on which the Contract Rents, the initial Contract Rents or the Contract Rents currently in effect, must be reduced commensurately, and the amount of the savings credited to the project account." 24 C.F.R. § 883.308(d); see also Housing Assistance Payment Contract at ¶ 2.7(g)(2) (June 4, 1984) (stating same).

The "project account" referenced by the federal regulation is discussed in the Housing Assistance Payment Contract between the Authority and the Plaintiff in paragraph 2.3. This paragraph establishes that the project account will be established and maintained by HUD, with "[a]ny amount remaining in the account after payment of the last annual contribution ... shall be applied by HUD in accordance with law." Housing Assistance Payments Contract at ¶ 2.3(b)(4). While the project account is undoubtedly maintained by HUD, this fact alone does little to assist the Court in finding a present case or controversy.

Two questions, set forth in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), must be answered in assessing whether a case or controversy is present: "(1) are the issues fit for judicial review and (2) will hardship fall to the parties upon withholding court consideration?" *Arch Mineral Corp. v. Babbitt*, 104 F.3d 660, 665 (4th Cir.1997). The Court of Appeals further clarified the first prong in *Charter Federal Savings Bank v. Office of Thrift Supervision*, 976 F.2d 203 (4th Cir. 1992). "A case is fit for judicial decision where the issues to be considered are purely legal ones and where the agency rule or action giving rise to the controver-

sy is final and not dependent upon future uncertainties or intervening agency rulings." *Id.* at 208.

In *Arch Mineral Corp.*, a mining corporation brought action for declaratory and injunctive relief to preclude the Department of the Interior from linking the mining corporation to another company owing fees and penalties to the Department of the Interior. The United States District Court for the Southern District of West Virginia granted summary judgment for the plaintiff and issued injunctive and declaratory relief. The Court of Appeals affirmed, finding that the case met the case and controversy requirements to be ripe for judicial review.

The government argued in *Arch Mineral Corp.* that at the time the mining corporation sued, the Department of the Interior had not decided to link the companies; therefore there was no final action. The appellate court concluded, however, that "[f]or all practical purposes, however, the decision [had] been made." *Id.* at 666. In reaching that decision, the Court of Appeals relied upon the final letter sent by the Department of the Interior to the mining corporation, where the Department stated that the Department presumed the corporations linked and that unless the mining corporation responded within 30 days, the companies would be formally linked in the Department's files. *Id.*

 These facts are vastly different from the facts before the Court in this matter. Here, the Department of Housing and Urban Development has undertaken no action aimed at the Authority. HUD acknowledges that the Annual Contributions Contract does provide that if the Authority "fails to perform or observe any term or condition of the Agreement or Contract with the Owner," then the Authority is in default under the Annual Contributions Contract between the Authority and HUD. *See* Annual Contributions Contract § 2.16(a)(1)(I) (Sept. 29, 1983).

The Authority in essence fears that HUD, which continues to meet its obligations under the Annual Contributions Contract, may some time in the future seek to reclaim subsidies provided to the Authority for North Jefferson Square. The question particularly crystallizes if the mortgage interest rate charged to the Plaintiff, upon which the rent charged to the subsidized tenants, said rent in turn being used to calculate the subsidy by HUD, has been improperly inflated by the Authority.

However, despite the dire predictions of the Authority, there are no indications that HUD plans any action against the Authority. No "final demand" letter, akin to that received by the mining company/plaintiff in *Arch Mineral Corp.*, has been issued by HUD. The present facts are a far cry from those of *Arch Mineral Corp.*, where the linkage of the two companies was "a foregone conclusion, simply a formality, at the time [the] case was commenced...." *Id.* at 667.

The absence of any action by HUD, even of the most preliminary of nature, renders this matter into the realm of future possibilities that this Court cannot adjudicate. HUD conceivably could simply adjust its subsidy payments henceforth, or HUD could make a claim for overpayments for all or some part of the past years. It is conceivable also that the Authority's position as to whether or not it is required to reduce the Plaintiff's debt service following the interest rate reduction would prevail, with the result of no changes in any legal or financial positions. These are too many vagaries and uncertainties to permit this Court to award any declaratory relief.

The Supreme Court stated in *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941), that the question for a court from which declaratory relief is requested is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 273, 61 S.Ct. 510. Presently HUD has no adverse

legal position to the Authority, indeed, HUD has no legal position at all and HUD has not made any administrative decision to take action.[5] This case lacks the "concrete context" that defines a case subject to adjudication. *See Gilles v. Torgersen,* 71 F.3d 497, 500 (4th Cir.1995).

■ Lastly, the Authority asserts an alternative legal argument that it is entitled under the McKinney Act to one half (50%) of any savings derived from the interest rate reduction. *See* 42 U.S.C. § 1437f note. No dispute exists in this regard, as the United States Attorney concedes that the Authority is to receive one half of the amount recaptured from the project. *See* Memorandum in Support of Motion to Dismiss at 5 (May 25, 1999). Given all of this, the Court finds no controversy of any immediacy and, accordingly, no jurisdiction.[6]

### *The Prudential Inquiry*

■ Furthermore, this Court, under the Declaratory Judgment Act, is not required to undertake all requests for a declaration of a party's rights. *See Aetna Casualty & Surety Co.,* 139 F.3d at 421. "A federal court has the discretion to decline to entertain a declaratory judgment action, but, under the law of this Circuit, the court must do so only for 'good reason.'" *Continental Casualty Co. v. Fuscardo,* 35 F.3d 963, 965 (4th Cir.1994).

In *Aetna Casualty & Surety Co. v. Ind–Com Electric Co.,* the United States Court of Appeals for the Fourth Circuit elaborated on a trial court's discretion under the Declaratory Judgment Act in the absence of a parallel state court proceeding. The Court of Appeals first directs the Court to the general proposition that a district court "entertain a declaratory judgment action when it finds that the declaratory relief sought: (1) 'will serve a useful purpose in clarifying and settling the legal relations in issue,' and (2) 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Id.* at 422 (quoting from *Aetna Casualty & Surety Co. v. Quarles,* 92 F.2d 321, 325 (4th Cir.1937). After initial consideration of the *Quarles* analysis, a district court then weighs concerns as to federalism, efficiency, and comity. *Id.* While the pendency of a state court action is a fundamental factor in our system of federalism, it is not a requirement before a district court may decline to consider declaratory relief. *Id.* at 423. "To hold otherwise would in effect create a per se rule requiring a district court to entertain a declaratory judgment action when no state court proceeding is pending. Such a rule would be inconsistent with our long-standing belief that district courts should be afforded great latitude in determining whether to grant or deny declaratory relief." *Id.*

---

5. The Authority would have the Court infer a claim to fifty percent of any savings because of HUD's concession that a statutory provision, section 1012 of the McKinney Act, says that the Authority receives fifty percent of any savings. *See* Memorandum in Support of Objections to the Magistrate Judge's Report and Recommendation at 12 (Dec. 23, 1999) (arguing the existence of an "implicit claim" by HUD). This creative attempt to turn HUD's concession on its head and into a claim will not suffice. The Court will not infer a claim from a concession made by HUD in order to maintain HUD as a party defendant in this matter. Claims must set forth sufficient information to provide the Court and other parties a fair idea of the claim and the basis for recovery. To permit the Authority to construct a claim as it proposes would eviscerate this traditional definition. If HUD plans on asserting a claim, it may do so in the traditional manner, i.e., voluntarily and on its own accord.

6. The Court notes the presence of the Amended Complaint of the Plaintiff, where HUD is named as a party defendant. The Magistrate Judge's Report and Recommendation does not qualify his recommendation, but instead recommends complete dismissal of HUD from this action. A review of the filings and transcripts in this case reflect no opposition ever from the Plaintiff to HUD's efforts to be dismissed from the case. The Court finds no clear error of law in the Magistrate Judge's recommendation in light of the Plaintiff's failure to oppose HUD's dismissal and Plaintiff's failure to note any objections to the Magistrate Judge's Report and Recommendation.

The decision of HUD to undertake the action feared by the Authority would reflect a policy decision by the cabinet agency, subject to the political vagaries of the moment and the long-term public policy goals of the federal government. No such decision has been made, indeed no indication that the matter has even been considered in the past years that the present facts accrued is presented to the Court. The Court is doubtful that given these facts, where an agency of the government has not even begun to consider an action, that it is the proper role of the Court to intrude. The notion of comity between the federal judiciary and state judiciaries is similar to the delicate balance between the three branches comprising the federal government. The Constitution demands the Court pay proper respect to the role of the other two branches of government. "Federal courts are to exercise their power only as a last resort and as a necessity; questions of policy and execution of the law are to be reserved for the legislative and executive branches." Newark Branch, *NAACP v. Township of West Orange*, 786 F.Supp. 408, 427 (D.N.J.1992). The Court further chooses to exercise its discretion and declines to issue the requested declaratory relief.

**B. Remand to the Circuit Court of the City of Newport News**

The Authority seeks to maintain this action in this Court. The Magistrate Judge recommends that this case be returned to state court for decision, as the Magistrate Judge finds no federal basis for jurisdiction remaining following dismissal of HUD from this civil action. Again, this Court possesses limited jurisdiction and places great importance upon the notions of federalism and comity that constrain this forum.

A review of the Amended Complaint of this case finds that all the numbered claims are claims made under breach of contract theories. The Authority responds with a litany of federal regulations and statutory provisions it believes will necessarily be interpreted in resolution of the underlying breach of contract claim.

Obviously the Plaintiff's claims are not created at federal law, but instead emerge from contract law. Thus, the Court cannot automatically conclude that § 1331 is invoked properly, but instead must examine whether the Plaintiff's demands necessarily involve federal laws nonetheless.

The United States District Court for the Southern District of Florida addressed a similar situation in *Kunkler v. Fort Lauderdale Housing Authority*, 764 F.Supp. 171 (S.D.Fla.1991). In that case, a landlord sued HUD and a city housing authority for breach of contract after the termination of the landlord's rental subsidies under the Section 8 program. The district court there stated that "[t]he mere fact that plaintiff was a participant in a program created by the federal government, or that HUD regulations apply to the contracts at issue does not require the pivotal interpretation of federal law necessary to confer jurisdiction." *Id.* at 174; *see also American Fidelity Fire Ins. Co. v. Construcciones Werl, Inc.*, 407 F.Supp. 164, 186–87 (D.Vi.1975) ("The fact that sections of the National Housing Act or its implementary regulations are invoked by the parties does not magically transform this action into one arising under the laws of the United States."); *cf. Beverlin v. I.R.S.*, 574 F.Supp. 553, 554 (W.D.Mo.1983) ("The fact that parties include the language of a federal law in their contract does not raise a breach of such contract to a 'civil action arising under the Constitution laws or treaties of the United States,' even though an interpretation of the contract will involve interpretation of language that is also a federal statute.").

In the case now before the Court, the Authority argues that it did not have an obligation to reduce the interest rate charged to the Plaintiff. The Plaintiff's complaint cites only contractual provisions between itself and the Authority, making no reference to federal regulations.

The presence of parallel language between 24 C.F.R. § 883.308(d) and the Housing Assistance Payment Contract at paragraph 2.7(g)(2) is significant, but not determinative. The federal regulations noted by the Authority are of a persuasive nature in this case. In the final analysis, traditional principles of contract interpretation will decide the claims Plaintiff has made. Weighing this and the general preference for remand of cases when federal jurisdiction is not clear, the Court finds no error in the Magistrate Judge's recommendation to remand this matter to the Circuit Court of the City of Newport News.

### IV. CONCLUSION

For the foregoing reasons, the Authority's objections are **OVERRULED**. The Court **ACCEPTS** the recommendation of the Magistrate Judge. The United States Department of Housing & Urban Development's Motions to Dismiss are **GRANTED**. This matter is **REMANDED** to the Circuit Court of the City of Newport News, Virginia.

The Clerk of the Court is **DIRECTED** to send a copy of this order to counsel of record.

**IT IS SO ORDERED.**