**RECOVERY LIMITED PARTNERSHIP,**
Plaintiff,

v.

**THE WRECKED AND ABANDONED VESSEL, S.S. CENTRAL AMERICA, et al., Defendants.**

**CIVIL ACTION NO: 2:87cv363**

United States District Court,
E.D. Virginia,
Norfolk Division.

Signed June 29, 2017

Filed 06/30/2017

Goldstar (Panama) S.A.

---

**13.** The War Crimes Act was passed in 2002, a decade after the Fourth Circuit decided

James L. Chapman VI, Esquire, Cyrus W. Grandy, Esquire, Steven M. Stancliff, Esquire, Crenshaw Ware & Martin PLC, 150 West Main Street, Suite 1500, Norfolk, VA 23510, Conrad M. Shumadine, Esquire, Brett A. Spain, Esquire, Willcox & Savage PC, Wells Fargo Center, 440 Monticello Avenue, Suite 2200, Norfolk, VA 23510, for Plaintiff.

---

**OPINION AND ORDER**

Rebecca Beach Smith, Chief Judge

This matter comes before the court on the Motion for Declaratory Judgment ("Motion"), and accompanying Memoran-dum, filed by Odyssey Marine Exploration, Inc. ("Odyssey") on April 3, 2017. ECF Nos. 236, 237. After asking for and receiv-ing an extension of time, see ECF Nos. 244, 245, Recovery Limited Partnership ("RLP") filed its Response on May 1, 2017. ECF No. 246. Odyssey also requested and received additional time to file its Reply, see ECF Nos. 247, 248, and filed said Reply on May 11, 2017. ECF Nos. 252, 253, 254.[1] The court held a hearing on the Motion on June 20, 2017. ECF No. 257.

**I.**

This litigation involves the discovery and salvage of the S.S. Central America ("Cen-tral America"), a ship "carrying over 500 passengers and crew, as well as a signifi-cant amount of commercial and personal gold," which sank off the coast of South Carolina in September of 1857. Columbus–Am. Discovery Grp., Inc. v. Unidentified, Wrecked & Abandoned Sailing Vessel, 34 F.Supp.3d 595, 597–98 (E.D. Va. 2014) (Smith, J.).[2] Columbus–America Discovery Group ("CADG") discovered the Central America and conducted recovery efforts from 1989 through 1991. After much litiga-tion, CADG and the insurance underwrit-ers who "alleg[ed] they had insured the commercial gold shipments and paid for the losses" "eventually agreed to a settle-ment, which divided the [recovered] gold in specie and dismissed all claims of the parties, including 'the possibility of claims between the parties over future salvage.' " Recovery Ltd. P'ship v. Unidentified, Wrecked & Abandoned Sailing Vessel, 204 F.Supp.3d 864, 867 (E.D. Va. 2016) (Smith, J.) (quoting Columbus–Am. Discovery Grp.

---

1. Odyssey's Reply was originally docketed at ECF No. 249. However, due to an error in one of the supporting exhibits, see ECF No. 251, Odyssey refiled the Reply and the sup-porting exhibits later that same day. ECF Nos. 252, 253, 254. This Opinion and Order refers only to ECF No. 252 as Odyssey's "Re-ply."

2. For a more complete background and histo-ry of the litigation, see id. at 597–600.

v. Atl. Mut. Ins. Co., 203 F.3d 291, 297, 300 (4th Cir. 2000)). Following some infrequent filings and many years later, on January 3, 2014, RLP made an appearance in this case for the first time, moving to be substituted as the real-party-in-interest for CADG. ECF No. 1. RLP's Motion to Substitute Party was granted and, accordingly, RLP was declared the salvor-in-possession of the Central America. Columbus–Am., 34 F.Supp.3d at 607.

Important to this matter, in the years since the first salvage effort, due to RLP being in "great disarray and insolvency," RLP has been placed in receivership by the Court of Common Pleas of Franklin County, Ohio (the "Ohio Court"). Id. at 599. The Receiver entrusted with managing the assets and business of RLP is Ira Kane. Id. In 2014, RLP, through its Receiver and with the permission of the Ohio Court, contracted with Odyssey to conduct further salvage operations of the Central America. Mem. Supp. at 2; Ex. 2, ECF No. 237–2. Based on these new salvage operations, RLP filed an in rem complaint against the Central America, which initiated a new civil action. 2:14cv160, ECF No. 1.[3] The second salvage effort was successful, and on August 31, 2016, this court found that a judicial sale of the recovered artifacts (the "2014 artifacts") would be inadequate to pay RLP its full salvage award, and accordingly, granted RLP title to the 2014 artifacts. Recovery Ltd. P'ship, 204 F.Supp.3d at 879. This award closed the case for all salvage activities to date.

## II.

Odyssey now seeks to reopen the case,[4] requesting an order declaring its rights under the Master Services Agreement ("MSA"), the contract which details Odyssey's and the Receiver's obligations and duties with respect to the 2014 salvage operations and the 2014 artifacts. Mem. Supp. at 2; Ex. 2. The nature of the contractual dispute between the parties, as described by Odyssey, is as follows: The 2014 artifacts are currently being stored in a conservation facility operated by Numismatic Conservation Services, LLC ("NCS").[5] The Receiver is considering moving the artifacts to another conservation and storage facility. Mem. Supp. at 4; Resp. at 8–12. "Odyssey is concerned that moving the coins could result in physical damage to the collection and economic damage to Odyssey, RLP, and RLP's investors, creditors and other stakeholders." Mem. Supp. at 4. Odyssey contends that "[u]nder Section 4. 7 of the MSA, ... Odyssey has a clear right to participate in the decision-making process and approve

---

**3.** Filings in Case No. 2:14cv160 are noted as such. All other docket entries are in Case No. 2:87cv363.

**4.** In the litigation concerning the 2014 salvage operations and the recovered artifacts, Odyssey never appeared as a party before this court. Perhaps for that reason, Odyssey filed the instant Motion as an "interested party," rather than initiating a new case. Whether this was the proper course of action is debatable, and, indeed, the parties have debated so. See Resp. at 13 & n.10; Reply at 8–9. To the extent the parties request the court make a determination as to whether this filing is properly presented as a motion or a complaint for declaratory judgment, see Resp. at

13 & n.10; Reply at 8–9, the court declines to do so as it is unimportant to the court's ruling that it does not have jurisdiction over the contractual dispute between the parties. See infra Part III.

**5.** NCS was originally approved by the court to store the 2014 artifacts as an agent of the court, pending a final determination of salvage rights. See 2:14cv160, ECF No. 61. After RLP was granted title to the 2014 artifacts, on RLP's motion, the court relieved NCS of its custodial obligation for the property as an agent of the court, and ordered that NCS act at the direction of RLP, by its Receiver. See 2:87cv363, ECF No. 232.

any matters relating to the storage, transport[,] and conservation of the coins and artifacts." Id. at 5.[6]

Accordingly, "Odyssey seeks a declaration that it is entitled to participate in and approve decisions regarding the safekeeping, transportation[,] and conservation of the coins and artifacts and that any inspections of the coins and artifacts must be attended by representatives from both parties." Id. at 6. Odyssey also seeks an award of "attorney[s]' fees and expenses incurred in making th[e] motion." Mot. at 1.

### III.

■ The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). However, "[t]he Declaratory Judgment Act is a procedural statute that does not itself confer jurisdiction upon a court." Norfolk Dredging Co. v. Phelps, 433 F.Supp.2d 718, 720 (E.D. Va. 2006) (Smith, J.) (citing Mut. Life Ins. Co. of N.Y. v. Moyle, 116 F.2d 434, 437 (4th Cir. 1940)). Accordingly, before the court can determine whether the declaration of any rights is due, the court must first assure itself of jurisdiction over the case. See id.

■ The United States Court of Appeals for the Fourth Circuit has set forth "three essential[ ]" requirements for the proper exercise of jurisdiction in a declaratory judgment action:

(1) the complaint alleges an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment;" (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.

Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 592 (4th Cir. 2004) (citing 28 U.S.C. § 2201(a); Cont'l Cas. Co. v. Fuscardo, 35 F.3d 963, 965 (4th Cir. 1994); N. Jefferson Square Assocs. v. Va. Hous. Dev. Auth., 94 F.Supp.2d 709, 714 (E.D. Va. 2000)). While prongs one and two are referred to as the "constitutional inquiry," and prong three is referred to as the "prudential inquiry," all three requirements must be met and the absence of any one is sufficient to dismiss the action. See Cont'l Cas. Co., 35 F.3d at 965, 968–69 (affirming district court's exercise of its discretion to dismiss declaratory judgment action based on the prudential inquiry).

RLP argues that Odyssey fails to satisfy all three essential requirements. Specifically, RLP contends that (1) this matter does

---

6. Section 4.7 of the MSA states:

All Valuable Cargo and Cultural Heritage Items recovered shall be securely transferred from the Recovery Vessel to a secure third party facility mutually agreed upon by the Parties for safekeeping and appropriate conservation. The costs of this facility and related Conservation Costs shall be shared and paid 45% by Odyssey and 55% by Receiver. Designees from each Party shall confirm and reconcile the Inventory with the transfer of Cultural Heritage Items and

Valuable Cargo to safekeeping at the time of such transfer. A designee from both Parties must be present any time one of the Parties desires to inspect or otherwise be present in the secure third party facility. Id. (emphasis added). At a threshold level, the court notes that this section of the MSA specifically refers to the initial transfer of the "Valuable Cargo and Cultural Heritage Items" from "the Recovery Vessel" and does not, on its face, address later transfers. See id.

not present an "actual controversy," Resp. at 24–26; (2) this court lacks subject matter jurisdiction, id. at 18–23; and (3) even if this court determines there is an actual controversy and that it has subject matter jurisdiction over the dispute, the court should still decline to exercise that discretion for prudential reasons, id. at 26–29. Here, however, the court begins and ends its analysis with subject matter jurisdiction: Although Odyssey argues this court has continuing in rem jurisdiction in admiralty over the 2014 artifacts, title to which was granted to RLP as a salvage award on August 31, 2016, see Mem. Supp. at 7–8; Reply at 3–8, Odyssey is incorrect. While the court retains in rem jurisdiction over the Central America and the wreck site, and any future salvage operations thereto, it does not maintain jurisdiction over the res of the past salvage operations, here those in 2014. Recovery Ltd. P'ship, 204 F.Supp.3d at 879 (awarding title to res to RLP); see Columbus–Am., 203 F.3d at 301 (stating the district court's initial dismissal order premised on a settlement agreement between the parties only resolved and dismissed the dispute between the parties over the res, but did not relinquish the district court's continuing in rem jurisdiction over the shipwreck).

▬ Simply put, "[a]n in rem action ... depends on the court's having jurisdiction over the res." R.M.S. Titanic, Inc. v. Haver, 171 F.3d 943, 964 (4th Cir. 1999). "Only if the court has exclusive custody and control over the property does it have jurisdiction over the property so as to be able to adjudicate rights in it that are binding against the world." Id. Possession of the res "may be actual or constructive." Id. Generally, in rem jurisdiction over a shipwrecked vessel is initially established when a part of the wreck is presented to the court, resting upon "the fiction that the res is not divided and that therefore possession of some of it is constructively possession of all." Id. In cases involving the salvage of historic wrecks such as this one, "the admiralty court exercises in rem jurisdiction only to enforce [the] maritime lien" held by the salvor in the salved property as a means to guarantee compensation for the salvage service. Id. at 963. Further, so long as the salvage operation continues, "to protect a salvor's general salvage rights, a court of admiralty will protect the inchoate right of salvors in yet-to-be salved property for a reasonable period." Id. These salvage rights in the wreck "include the right exclusively to possess the wreck for purposes of enforcing the maritime lien that [the salvor] obtained as a matter of law." Id. at 968.

▬ By virtue of RLP's status as the real-party-in-interest of the first successful salvor, CADG,[7] RLP has a maritime lien in the Central America, attached to which is "the right to exclusive possession, not only of the artifacts removed from the wreck ... but also of the wreck itself, so that no other person is entitled lawfully to intrude as long as salvage operations continue." Id. at 966. Accordingly, this court still has in rem jurisdiction over the Central America, including the site and the unrecovered artifacts, to enforce RLP's right to exclusive possession. See id.; Columbus–Am., 203 F.3d at 301.

▬ However, with respect to the 2014 artifacts, once those artifacts are "brought in custodia legis, th[is] court can execute on [the salvor's] lien and sell the property, or if the sale of the property would prove insufficient to compensate [the salvor] fairly, the court can award title in the property to [the salvor]." R.M.S. Titanic, Inc., 171 F.3d at 966. Importantly,

---

**7.** See Columbus–Am., 34 F.Supp.3d 595

(granting RLP's Motion to Substitute Party).

"[o]nce the lien is executed and the salvor as lienholder is paid its reward, whether in money or in kind, the reward becomes the property of the salvor to do with what it wants." R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel, 286 F.3d 194, 204 (4th Cir. 2002) (emphasis added) (citing Point Landing Inc. v. Alabama Dry Dock & Shipbuilding Co., 261 F.2d 861, 866 (5th Cir. 1958)).[8] As the court's grant of title to the 2014 artifacts to RLP was without covenants or conditions,[9] the grant of title transferred exclusive control over the 2014 artifacts from this court to RLP, and, consequently, terminated the court's in rem jurisdiction with respect to the 2014 artifacts. Accordingly, there is no longer any basis for this court to assert actual or constructive in rem jurisdiction over the 2014 artifacts. Not only that, but because RLP is under receivership of the Ohio Court, RLP's assets—which now include the 2014 artifacts—are in the custody of that court. Thus, as of August 31, 2016, the 2014 artifacts are, in fact, subject to the Ohio Court's receivership jurisdiction.

■ Although Odyssey relies heavily on the forum selection clause in the MSA [10] to contend this court continues to have jurisdiction over the 2014 artifacts, a forum selection clause is not capable of vesting this court with subject matter jurisdiction when it has none. See Ins. Corp. of Ireland, Ltd v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court."); Licensed Practical Nurses, Technicians & Health Care workers of N.Y., Inc. v. Ulysses Cruises, Inc., 131 F.Supp.2d 393, 402–03 (S.D.N.Y. 2000) ("Private parties cannot defeat the subject matter jurisdiction of the federal courts by means of a forum-selection clause, any more than they could, by the same means, confer such jurisdiction on this court in a case in which diversity or a federal question were lacking.").

**8.** Odyssey relies on Republic Nat'l Bank v. United States, 506 U.S. 80, 88–89, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992), to argue that "in an in rem case the release or transfer of the res from the district does not divest the court of jurisdiction." Reply at 6. In Republic Nat'l Bank, the Supreme Court held that "the Court of Appeals is not divested of jurisdiction by the prevailing party's transfer of the res from the district." 506 U.S. at 88–89, 113 S.Ct. 554 (emphasis added). Whether an appeals court loses appellate jurisdiction over an in rem case because the prevailing party transferred the res out of the judicial district is a very different question from whether the district court retains in rem jurisdiction to decide additional, collateral matters related to the res, after a maritime lien is executed. The former question deals with the right to appeal, which "is a crucial safeguard against abuse." Id. at 92–93, 113 S.Ct. 554. The latter does not.

**9.** Compare Recovery Ltd. P'ship, 204 F.Supp.3d at 879 (granting title to RLP without covenants or conditions), with R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel, 742 F.Supp.2d 784, 792–93 & n.10, 808–09 (E.D. Va. 2010) (Smith, J.), and R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel, Its Engines, Tackle, Apparel, Appurtenances, Cargo, Etc., 804 F.Supp.2d 508, 509 (E.D. Va. 2011) (Smith, J.) (granting title to R.M.S. Titanic, Inc. subject to covenants and conditions).

**10.** Section 11.14.1 of the MSA states:

Each Party to this Agreement irrevocably submits to the exclusive jurisdiction of the state courts of the State of Ohio, specifically, the Common Pleas Court of Franklin County, for the purpose of any action or dispute between the Parties arising in whole or in part under or in connection with this Agreement; provided, however, that to the extent any dispute arises between the Parties regarding the Site, Central America, Valuable Cargo or Cultural Heritage Items, the Parties irrevocably submit to the exclusive jurisdiction of the Federal Court.

Id. (emphasis added). But see supra note 6 (regarding earlier section 4.7 of the MSA).

Finally, the forum selection clause of the MSA was written and agreed upon by the parties <u>before</u> this court's decision on the salvage award, when the court did possess <u>in rem</u> jurisdiction over the 2014 artifacts.[11] When put into this context, the forum selection clause logically sorts disputes arising under the MSA between the Ohio Court and this court based on their respective jurisdictions at the time. However, as explained above, once this court granted title to the 2014 artifacts to RLP as its salvage award, this court's <u>in rem</u> jurisdiction over the 2014 artifacts ended and the 2014 artifacts became a receivership asset, and thus subject to the Ohio Court's receivership jurisdiction. Any contract dispute between RLP and Odyssey over the MSA must now be resolved by the Ohio Court.

## IV.

For the above reasons, this court does not have subject matter jurisdiction over this contract dispute between the parties. Accordingly, Odyssey's Motion is **DISMISSED**, as is any claim for attorneys' fees and expenses incurred for filing the Motion. The Clerk is **DIRECTED** to send a copy of this Opinion and Order to the parties and to the Court of Common Pleas of Franklin County, Ohio.

**IT IS SO ORDERED.**

---

11. See <u>supra</u> at 609 (noting RLP and Odyssey contracted to conduct salvage operations in 2014 but that the salvage award was not rendered until August 31, 2016); <u>see also</u> <u>supra</u> note 5 (describing orders initially appointing NCS as custodian of the 2014 artifacts as the agent of the court, pursuant to the court's <u>in rem</u> jurisdiction over the 2014 artifacts, and subsequently relieving NCS of its status as agent of the court in order to carry out the judgment of the court awarding title to the 2014 artifacts to RLP and terminating this court's <u>in rem</u> jurisdiction over said artifacts).